**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JAMILLAH A.,

Plaintiff,

v. 6:25-CV-751 (MAD/DJS)

FRANK BISIGNANO, *Acting Commissioner of Social Security*,

Defendant.

---

**APPEARANCES:** **OF COUNSEL:**

LEGAL AID SOCIETY OF MID-NEW YORK PETER ZISSER, ESQ.
Attorney for Plaintiff
120 Bleecker Street
Utica, New York 13501

U.S. SOCIAL SECURITY ADMIN. NATASHA OELTJEN, ESQ.
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt.

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(e).

No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 9 & 14-15. For the reasons set forth below, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be **GRANTED**, and Defendant's Motion for Judgment on the Pleadings be **DENIED**. The Court, therefore, recommends that the matter be remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1974. Dkt. No. 8, Admin. Tr. ("Tr.") at p. 296. She has a high school education. Tr. at p. 288. She has past work experience as a nurse's aide at nursing homes. *Id.* Plaintiff alleges disability based upon lumps in her back, spinal issues, feet issues with lumps, grand cellular tumors, throat issues with lumps, left arm weakness, mental health issues, depression, and anxiety. Tr. at p. 287.

### B. Procedural History

Plaintiff applied for disability insurance benefits and supplemental security income on November 2, 2021. Tr. at pp. 55-56, 141-42, 255-64, & 282-85. She alleged a disability onset date of September 4, 2020. Tr. at pp. 55-56 & 141-42. Plaintiff's applications were initially denied on July 6, 2022. Tr. at pp. 55-56 & 143-52. Reconsideration was denied on March 8, 2023. Tr. at pp. 141-42 & 159-84. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 185-86. Plaintiff appeared at a hearing before ALJ Jeremy Eldred on September 15, 2023, at

which Plaintiff and a vocational expert ("VE") testified. Tr. at pp. 37-54. On November 8, 2023, the ALJ issued a written decision finding Plaintiff was not disabled. Tr. at pp. 21-31. On August 1, 2024, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 7-12.

**C. The ALJ's Decision**

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025. Tr. at p. 23. Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 4, 2020, her alleged onset date of disability. *Id.* Third, the ALJ found that Plaintiff had the following severe impairments: granular cell tumors, dysphagia, major depressive disorder, and generalized anxiety disorder. *Id.* Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. Tr. at p. 25. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at the light exertional level, except that she:

> can stand and/or walk for a total of four hours in an eight-hour workday; can climb occasionally; can balance, stoop, kneel, crouch, or crawl frequently; can understand, remember, and carry out simple and routine instructions; can use judgment to make simple work-related decisions; can interact appropriately with supervisors, co-workers, or the public; and can appropriately adapt to ordinary changes in a routine work setting.

Tr. at p. 26. The ALJ then found that Plaintiff was unable to perform her past relevant work. Tr. at p. 29. Next, the ALJ found that transferability of job skills was "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not the [Plaintiff] has transferable job skills." *Id.* The ALJ then determined that, based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id.* The ALJ, therefore, concluded that Plaintiff was not under a disability at any time from the alleged onset date of September 4, 2020, through the date of the ALJ's decision. Tr. at p. 30.

**D. The Parties' Positions**

Plaintiff makes three arguments in support of reversal. First, Plaintiff claims that substantial evidence does not support the ALJ's RFC determination. Dkt. No. 9, Pl.'s Mem. of Law at pp. 4-7. Second, Plaintiff argues that the ALJ failed to show that there are a significant number of jobs available in the national economy. *Id.* at pp. 7-10. Third, Plaintiff contends that the ALJ and the VE failed to address Plaintiff's general education development ("GED") levels. *Id.* at pp. 10-13.

In response, Defendant counters that substantial evidence supports the ALJ's findings that Plaintiff could perform a reduced range of light work. Dkt. No. 14, Def.'s

Mem. of Law at pp. 4-12. Defendant also contends that there were jobs existing in significant numbers that Plaintiff could perform. *Id.*

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B. Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is

> whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

After full and careful consideration, the Court concludes that the matter should be remanded for further proceedings.

### A. Evaluation of Medical Opinions in Forming the RFC

Plaintiff raises several issues related to the ALJ's evaluation of the opinion of Dante Alexander, M.D. ("Dr. Alexander"). First, Plaintiff notes that the ALJ's "findings with respect to the Plaintiff's daily activities were primarily taken from only one source[,]" namely, Dr. Alexander. Pl.'s Mem. of Law at p. 6. Having reviewed the ALJ's decision, the Court disagrees. In discussing Plaintiff's daily activities, the ALJ

does cite to Dr. Alexander's psychiatric evaluation to support his finding that Plaintiff "is capable of caring for her personal needs, doing laundry, and shopping." Tr. at p. 27 (citing Tr. at p. 1118); *see also* Tr. at p. 25 (same). However, the ALJ also relies on Community Health and Behavioral Services' office treatment records from November 15, 2022, which state that Plaintiff was "in the process of cleaning out her house," Tr. at p. 27 (citing Tr. at p. 1053), as well as their office treatment notes from December 19, 2022, which state that Plaintiff was "hosting a party at her home." *Id.* (citing Tr. at p. 1043). Further, the ALJ relies on University of Rochester Medical Center's office treatment notes to support his statement that Plaintiff was "adapting to new medical providers." Tr. at p. 25 (citing Tr. at pp. 386-93). Thus, the ALJ did not rely on only one source in discussing Plaintiff's daily activities, but instead properly took into consideration multiple sources for this information.

It appears that the root of Plaintiff's argument is that, instead of relying on Dr. Alexander's description of Plaintiff's daily activities, the ALJ should have relied on Plaintiff's description of her daily activities to Rita Figueroa, M.D. ("Dr. Figueroa"). Specifically, Plaintiff asserts that Dr. Alexander's opinion "is not consistent with the description of the Plaintiff's ADLs from Dr. Figueroa." Pl.'s Mem. of Law at p. 6 (comparing Tr. at p. 1118 with Tr. at p. 1122). In response, Defendant acknowledges that "the ALJ did not also cite Plaintiff's description of her activities to Dr. Figueroa," but argues that "does not undermine the ALJ's findings." Def.'s Mem. of Law at p. 9.

In Dr. Alexander's psychiatric evaluation, which is dated January 5, 2023, Dr. Alexander stated that Plaintiff could cook, clean, do laundry, shop, shower, and dress herself. Tr. at pp. 1116 & 1118. In contrast, in Dr. Figueroa's internal medicine examination, which is also dated January 5, 2023, Dr. Figueroa stated that Plaintiff cannot cook or clean, and has a hard time doing laundry, showering, and dressing. Tr. at pp. 1121-22. Thus, there is a conflict between Dr. Alexander's findings and Dr. Figueroa's findings regarding Plaintiff's daily activities.

The ALJ has a "duty to weigh conflicting evidence in the record and credit that which was more persuasive and consistent with the record as a whole." *James v. Comm'r of Soc. Sec.*, 2014 WL 4793451, at *7 (E.D.N.Y. Sept. 24, 2014). "[I]t is not the Court's function to re-weigh the evidence." *Jennifer S. v. Comm'r of Soc. Sec.*, 771 F. Supp. 3d 256, 264 (W.D.N.Y. 2025) (citing *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016)). Additionally, "[a]n ALJ does not have to state on the record every reason justifying a decision" and "is not required to discuss every piece of evidence submitted." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012).

With that said, "the ALJ must provide a reviewing Court with a sufficient explanation to ensure that they have complied with the legal procedures controlling their decision and cannot ignore or mischaracterize evidence." *Acosta Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *15 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022) (citing cases). As a component of this explanation, the ALJ

must articulate the persuasiveness of each medical opinion. *See, e.g.*, *Karli D. v. Comm'r of Soc. Sec.*, 2023 WL 3004012, at *7 (N.D.N.Y. Apr. 19, 2023) (holding that "the ALJ's failure to clearly articulate how persuasive she found [an] opinion was error"); *Anderson v. Kijakazi*, 2022 WL 938115, at *6 (S.D.N.Y. Mar. 3, 2022), *report and recommendation adopted sub nom. Anderson v. Comm'r of Soc. Sec.*, 2022 WL 925070 (S.D.N.Y. Mar. 29, 2022) ("The regulations . . . required the ALJ to articulate the persuasiveness of Dr. Kerenyi's opinion, with attention to the supportability and consistency of the opinion."); *Luis M. v. O'Malley*, 2025 WL 3101330, at *15 (D. Conn. Nov. 6, 2025) (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)) (remanding where the ALJ "fail[ed] to explain whether [a] medical opinion was persuasive, consistent with other opinion and medical evidence, and supported by objective medical evidence").

Here, in evaluating Dr. Figueroa's opinion, the ALJ stated that he found the opinion unpersuasive because it overstated Plaintiff's physical limitations and was not consistent with the record, including "the physical capacity suggested by the [Plaintiff's] activities." Tr. at p. 28. The ALJ did not, however, explain how he weighed Dr. Figueroa and Dr. Alexander's conflicting accounts of Plaintiff's daily activities. *See generally* Tr. at pp. 21-31. Moreover, the ALJ did not address how Dr. Figueroa's statement that Plaintiff cannot cook or clean, and has a hard time doing laundry, showering, and dressing, Tr. at pp. 1121-22, comports with Dr. Alexander's statement that Plaintiff can engage in these same activities. Tr. at pp. 1116 & 1118. It is unclear

why the ALJ relied on Dr. Alexander's report of Plaintiff's daily activities, but seemingly disregarded Dr. Figueroa's conflicting report of Plaintiff's daily activities.

This problem is further compounded by the fact that, while the ALJ acknowledged Dr. Alexander's opinion, Tr. at p. 28, he did not explicitly state whether he found that opinion persuasive or unpersuasive.[2] *See generally* Tr. at pp. 21-31. The Court also cannot glean from the ALJ's discussion of Dr. Alexander's opinion whether the ALJ found that opinion persuasive or not because, on one hand, the ALJ explained that Dr. Alexander's opinion "has support from his own mental status examination findings, which were generally unremarkable," but, on the other hand, the ALJ found Dr. Alexander's opinion "somewhat inconsistent with the information in the records from the [Plaintiff's] own mental health treatment providers," which the ALJ said "document difficulties with depression and anxiety which elevate those disorders to the level of 'severe' impairments." Tr. at p. 28 (citing Tr. at pp. 752-891 & 1042-1115).

The ALJ thus failed to articulate how persuasive he found Dr. Alexander's opinion while, at the same time, he relied on Dr. Alexander's explanation of Plaintiff's daily activities. *See*, *e.g.*, *Anderson v. Kijakazi*, 2022 WL 938115, at *6 ("ALJ Kenneally did not articulate how persuasive he found Dr. Kerenyi's opinion, but still relied heavily on it when determining Plaintiff's RFC."). Furthermore, the ALJ

[2] Neither Plaintiff nor Defendant accurately described the ALJ's evaluation of Dr. Alexander's opinion. Contrary to Plaintiff's assertions, Pl.'s Mem. of Law at p. 6, the ALJ did acknowledge Dr. Alexander's opinion, and evaluated that opinion in conjunction with the opinions of P. Roy-Petrick, Ph.D, and J. May, Ph.D. Tr. at p. 28. Additionally, contrary to Defendant's assertions, Def.'s Mem. of Law at p. 9, the ALJ did not explicitly state whether he found Dr. Alexander's opinion persuasive or unpersuasive. *See generally* Tr. at pp. 21-31.

seemingly relied on Dr. Alexander's account of Plaintiff's daily activities, which showed fewer limitations, Tr. at pp. 1116 & 1118, over Dr. Figueroa's conflicting account of Plaintiff's daily activities, which showed greater limitations. Tr. at pp. 1121-22. The Court cannot say that the ALJ's failure to determine the persuasiveness of Dr. Alexander's opinion was harmless given the ALJ's reliance on that opinion in describing Plaintiff's daily activities and the conclusions that the ALJ drew regarding Plaintiff's RFC based on those activities. *See*, *e.g.*, Tr. at pp. 25 (stating that Plaintiff's mental RFC limitations were "[b]ased on" and "supported by [Plaintiff's] various activities which require significant mental demands") & 27 (discussing Plaintiff's daily activities and concluding that their "physical and mental demands . . . support" Plaintiff's RFC assessment).

Accordingly, the Court recommends that the matter be remanded for further consideration of Dr. Figueroa and Dr. Alexander's medical opinions, including to resolve their conflicting accounts of Plaintiff's daily activities and to assess the persuasiveness of Dr. Alexander's opinion.

**B. VE Testimony**

*1. Number of Jobs*

Plaintiff also cites several errors related to the VE's testimony. Pl.'s Mem. of Law at pp. 7-13. Plaintiff first argues that the ALJ failed to resolve a conflict between the RFC determination and the VE's testimony, and consequently did not show that there are a significant number of jobs available in the national economy that Plaintiff is

capable of performing. *Id.* at pp. 7-10. Specifically, Plaintiff asserts that the VE testified that Plaintiff could perform jobs that require greater exertional abilities than Plaintiff's RFC. *Id.*

In general, when an ALJ utilizes a VE, the VE's testimony should be consistent with the Dictionary of Occupational Titles ("DOT" or "Dictionary"). *Brianna S. v. Comm'r of Soc. Sec.*, 2025 WL 1994933, at *3 (N.D.N.Y. June 6, 2025), *report and recommendation adopted sub nom. Brianna S. v. Bisignano*, 2025 WL 1994656 (N.D.N.Y. July 17, 2025). The ALJ is obligated to question the VE regarding his or her consistency with the DOT. *Id.* To the extent that there is an unresolved conflict between VE and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE's testimony to support a determination or decision about whether the claimant is disabled." *Id.* (quoting *Reilly v. Comm'r of Soc. Sec.*, 2020 WL 6507327, at *3 (W.D.N.Y. Nov. 5, 2020)) (internal quotation marks and citation omitted).

Here, the ALJ acknowledged that Plaintiff's "ability to perform all of the requirements of light work has been impeded by additional limitations." Tr. at pp. 29-30. Specifically, the ALJ determined that "[Plaintiff] has the [RFC] to perform a full range of work at the light exertional level," except that, among other things, "she can stand and/or walk for a total of four hours in an eight-hour workday." Tr. at p. 26.

At the hearing, the ALJ asked the VE whether jobs exist in the national economy for an individual with the same RFC as Plaintiff—namely, an RFC at the light exertional level with the ability to stand and/or walk for a total of only four hours in an eight-hour

workday. Tr. at pp. 29-30 & 50-51. The VE responded that representative occupations such an individual could perform include the jobs of office helper, parking lot cashier, and information clerk. *Id.* The VE further testified that each of these jobs have a light exertional level, Tr. at p. 51, which the VE later defined as the ability to stand and/or walk for up to six hours in an eight-hour workday. Tr. at p. 53.

As noted by the ALJ in his decision, "the DOT does not specify light occupations that require standing and/or walking for a total of only four hours in an eight-hour workday." Tr. at p. 30. Reflective of this, upon the ALJ's inquiry, the VE confirmed that her testimony was consistent with the DOT and its companion publications, except for her consideration of limitations on standing and/or walking for a total of only four hours in an eight-hour workday, which the VE testified was based on her professional experience. Tr. at p. 51.

The ALJ did not, however, "attempt to reconcile the VE's testimony that a person who can walk or stand for [four] hours out of an eight-hour workday can perform the jobs of [office helper, parking lot cashier, and information clerk] with the Dictionary's indication that those jobs require light work." 2023 WL 2549607, at *3. The ALJ was required "to inquire into the apparent conflict and resolve the issue of whether the [three] identified jobs could accommodate a person who could stand or walk for no more than [four] hours in an eight-hour workday." *Id.*

Merely confirming whether the VE's testimony was consistent with the DOT did not adequately resolve the apparent conflict. *See Alex C. v. Kijakazi*, 2023 WL 2706232,

at *3 (D. Conn. Mar. 30, 2023). "To do this, the ALJ needed to 'elicit an explanation' from the VE that 'teas[ed] out [the] details' of each job identified by the VE, compared these specific details to the relevant DOT entries, and resolved any perceived conflict." *Id.* (quoting *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019)) (alterations in original). "The ALJ in this case only elicited from the VE two statements related to the apparent conflict: that the VE's testimony was consistent with the DOT and that any of the VE's opinions referencing information not addressed in the DOT were based on the VE's . . . experience." *Id.* The Court, therefore, recommends a finding that the actions taken by the ALJ upon seemingly noticing an apparent conflict between the VE's testimony and the DOT were insufficient to address the conflict and warrant remand.

While Defendant emphasizes the VE's testimony that light work is a "'spectrum'" that "contemplate[s] '*up to* six out of eight hours' of standing or walking,'" Def.'s Mem. of Law at p. 11 (quoting Tr. at p. 53) (emphasis in original), the court in *Robin M. v. Comm'r of Soc. Sec.* expressly rejected a similar argument by the defendant "that there was no conflict because the DOT does not state that the jobs require the full range of light work." 2023 WL 2549607, at *3.

*2. GED Level*

Plaintiff next contends that the VE erred when she testified that Plaintiff could perform the jobs of parking lot cashier and information clerk because each of these jobs

have a reasoning development level ("RDL") that conflicts with Plaintiff's RFC. Pl.'s Mem. of Law at pp. 10-13 (citing Tr. at p. 51).

Plaintiff explains that the job of parking lot cashier has an RDL of three, which is defined by the DOT as requiring Plaintiff to: "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* at p. 11 (quoting DOT, Appendix C) (internal quotation marks omitted). Similarly, Plaintiff explains that the job of information clerk has an RDL of four, which is defined by the DOT as requiring Plaintiff to: "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists" and "[i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *Id.* (quoting DOT, Appendix C) (internal quotation marks omitted). In contrast, Plaintiff notes that her RFC only requires her to "understand, remember, and carry out simple and routine instructions [and] use judgment to make simple work-related decisions." *Id.* at pp. 11-12 (quoting Tr. at p. 26) (internal quotation marks omitted) (alteration in original). Plaintiff also argues that the ALJ "[f]ailed to [r]esolve the GED [l]evel [c]onflict." *Id.* at p. 13.

Defendant's only response is that the aforementioned arguments made by Plaintiff regarding the VE's testimony are:

> largely academic . . . because the [VE] testified that even if Plaintiff were further limited to sedentary work (i.e., only two hours of standing or walking per workday), jobs would still be available, as the other

> limitations in the RFC would not significantly erode the available base of sedentary jobs.

Def.'s Mem. of Law at p. 11. The Court has considered this point but finds it unavailing.

Defendant is correct that the VE: (1) was questioned about whether there would still be jobs available in the national economy if the hypothetical was changed to sedentary; and (2) responded in the affirmative. Tr. at pp. 52-53. However, the ALJ did not determine that Plaintiff's RFC was limited to sedentary work, Tr. at p. 26, and no testimony was elicited from the VE regarding what specific job titles would be available if Plaintiff was limited to sedentary work and what the national estimation of available jobs would be. *See generally* Tr. at pp. 52-53. The Court is thus not convinced by Defendant's argument that the matter is merely "academic."

Accordingly, the Court recommends that the matter be remanded for further consideration of the consistency between the VE's testimony and the DOT and, to the extent that a conflict exists, further explanation supporting the ALJ's reliance on the VE's testimony.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings be **GRANTED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's decision denying Plaintiff disability benefits be **REMANDED pursuant to sentence four**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: July 21, 2026
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge